## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:21-cr-00272 |
| | ) |
| DAVID BARKLAGE, | ) |
| | ) |
|        Defendant. | ) |

### DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE/VARIANCE FROM THE FEDERAL SENTENCING GUIDELINES

**COMES NOW**, Defendant David Barklage, by and through Counsel, Joseph Passanise and Taylon Sumners of WAMPLER & PASSANISE LAW OFFICE, and moves this Court for a Downward Departure/Variance from the total offense level of 13 (12 to 18 months), as calculated in the Pre-Sentencing Investigation prepared on October 21, 2021, in accordance with the following Legal Suggestions:

### RELEVANT FACTORS IN THE INSTANT CASE

**I.    Offense Characteristics**

David Barklage was sixty (60) years old when he Pled Guilty to a single-count Indictment on August 25, 2021, for Filing False Income Tax Return (Pre-Sentencing Investigation Report hereinafter referred to as PSI at page 3, paragraph 1). Barklage was released on bond on May 7, 2021, and has had **no** violations during the pendency of this case.

The offense to which Barklage entered a timely Plea of Guilty goes back almost ten (10) years (PSI at 4:13). Barklage became the subject of an investigation in July 2015, when a previous client alleged Barklage was misappropriating funds from a political campaign. (PSI at 5:15). These allegations were determined to be baseless, as no embezzlement was

1

revealed by Barklage, or his company, The Barklage Company (PSI at 5:15). Instead, through the course of the investigation, it was determined that Barklage underreported his income on his federal income tax returns for the years 2012, 2013, and 2014 (PSI at 5:15). Barklage, as the acting president and sole owner of The Barklage Company, directly deposited payments from clients into **his** personal account and overstated business expenses, which were then incorrectly reported to his tax return preparer (PSI at 5:16). Overall, Barklage was determined to owe $151,843 in unpaid income taxes for tax years 2012, 2013, and 2014 (PSI at 5:17). Barklage has been able to borrow the funds to pay the restitution in full for the above amount owed. The restitution funds will be paid at the time of his sentencing.

## II.     Personal History

Barklage was born in Kansas City, Missouri, on April 21, 1961, and was subsequently adopted without knowledge of the identity of his biological parents until much later in life (PSI at 8:42). Barklage has been a lifelong resident of Missouri (PSI at 9:46). Barklage has two sisters that reside out of state, but describe Barklage, as many others do, as having a big heart and caring for everyone (PSI at 9:42). Both of Barklage's adopted parents passed away, his father in 2018 and his mother in September of 2021, during the pendency of his case (PSI at 8:42).

Barklage's mother, prior to her death, suffered a detrimental stroke, which resulted in Barklage traveling hours on a weekly basis to care for her (PSI at 8:42). Barklage's previous partner, Colleen Shea, described Barklage as caring for his elderly mother three (3) days a week for several years, during the time the two were in a relationship from 2004 to 2015 (PSI at 9:44). Shea had two (2) children from a previous relationship, whom Barklage helped raise and acted as a role model to during their relationship (PSI at 9:44).

2

Barklage married Audra Barklage in August of 2015, and she brought two (2) children into the relationship from a previous marriage (PSI at 9:45). Barklage is involved in both of the children's lives. Audra and Barklage remain married and supportive of one another (PSI at 9:45). Audra also describes Barklage as an unselfish person willing to help his family and friends (PSI at 9:45). Barklage has a strong support system in both his wife and his family.

Barklage graduated from high school and then went on to attend Central Methodist University, later transferring to Southeast Missouri State University for three (3) years (PSI at 10:52-54). Barklage cut back to part time during his second year at Southeast Missouri State, because he became a councilman on the Cape Girardeau City Council, where he served two four-year terms in 1982 (PSI at 11:54; 13:63). From 1992 to 1996, Barklage worked on political campaigns as a consultant and campaign manager, going on to own and manage Target Media Consultants from 1987 to 1998 (PSI at 12:62).

In 2009, Barklage founded The Barklage Company, where he continues to work as a political campaign manager, consultant, and lobbyist as the sole owner and president (PSI at 4:14; 11:60). Barklage employs a chief of staff and executive assistant (three employees total including himself), who rely on The Barklage Company to earn a living, as they receive a bi-weekly paycheck (PSI at 4:14). From 2012 to 2018, Barklage also co-owned Barklage and Knodell with Robert Knodell, which closed when Knodell went to work for the Missouri Governor (PSI at 11:59). Barklage recognizes that the current charge and felony conviction may negatively affect his political consulting business and fears a prison sentence could all but end it (PSI at 11:56).  Barklage has a long history of gainful employment and has built a reputation for being one of the best political consultants in Missouri.

Barklage has **no prior criminal history** (PSI at 7).  Barklage suffers from high blood pressure, but has no significant mental and emotional health issues (PSI at 10:48-49). Barklage does not have any substance issues (PSI at 10:50).

## LEGAL SUGGESTIONS

### I.     18 U.S.C. § 3553(a) FACTORS APPLIED TO DEFENDANT

Pursuant to 18 U.S.C. § 3553(a)(1), the Court shall consider the nature and circumstances of the offense and the history and characteristics of the Defendant. Under 18 U.S.C. § 3553(a)(2), the factors regarding a need for a sentence to be imposed include: (A) reflecting the seriousness of the offense to promote respect for the law and just punishment; (B) to afford adequate deterrents to criminal conduct; (C) to protect the public from further crimes; and (D) to provide the Defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner.

In the case-at-bar, Defendant Barklage has an extensive employment history, in which he has either been elected to office or owned and operated businesses of his own. Barklage has also cared for his elderly mother, helped raise children who were not his own, and remains married. All of these factors demonstrate that Barklage has a strong sense of responsibility. Further, Barklage has a strong support system in his wife, sisters, colleagues, and friends, as evidenced by the character letters sent on his behalf. This suggests a better chance of leading a productive life after the conclusion of this matter than the average similarly situated Defendant.

Other than the instant offense, which has humiliated him, Barklage has otherwise lived a law--abiding life and still maintains an excellent reputation for his good character as evidenced by the numerous good character letters. In considering 18 U.S.C. § 3553(a)(1), it is important to reiterate that Barklage has had no other significant prior criminal behavior at sixty (60) years old.

Although aberrant behavior does not normally qualify for downward departure, this Court is requested to consider Barklage's background, good character (notwithstanding his conduct in the instant offense), and his otherwise law abiding and hard-working life. Barklage also has exhibited an extraordinary demonstration of acceptance of responsibility in this matter.

18 U.S.C. § 3553(a)(A)-(C) will be more than satisfied by a sentence of probation with supervised release based on Barklage's lack of criminal history and payment of restitution in full.

## II.   DEFENDANT'S EXCELLENT EMPLOYMENT HISTORY

In *U.S. v. Chase*, 560 F.3d 828, 829 (8th Cir. 2009), the Defendant Pled Guilty to possession with intent to distribute methamphetamine and conspiring to distribute methamphetamine. The Eighth Circuit subsequently held that the Defendant's excellent employment record could support a downward variance. *See id.* at 831. In *United States v. Blake*, 89 F. Supp. 2d 328, 331 (E.D.N.Y. 2000), the Defendant Pled Guilty to bank robbery and assault during the commission of a bank robbery. The Court granted a departure from level 29 to level 8 with probation, given the Defendant's progress in maintaining employment and the fact opportunities for rehabilitation in federal prisons were decreasing based on the rising prison population. *See id.* at 337.

Here, Barklage has a lengthy employment history, which includes being elected for local office for two (2) four (4) year terms. Barklage has also worked on numerous political campaigns and owned and operated a company for numerous years, employing many others along the way. Despite the present offense, Barklage has worked to maintain the business he has built. Although, Barklage fears his business will be negatively impacted by his conviction as a felony, it would be even more detrimental for Barklage, his company, his staff, and his clients if Barklage were to be taken into custody for any period of time. Based on Barklage's extensive

employment history, a departure should be warranted under the courts' ruling in *Chase* and *Blake*. *See* 89 F. Supp. 2d at 331; 560 F.3d at 829.

### III. DEFENDANT'S RESTITUTION IS EXTRAORDINARY

Through borrowed funds, Defendant Barklage is paying the full $151,843 in restitution pursuant to 18 U.S.C. § 3663(a)(3) at sentencing and should therefore be entitled to credit for extraordinary restitution herein. Barklage's payment of restitution highlights his extreme remorse for his actions in this matter, but also showcases the faith others have in him. Barklage has been embarrassed by his conduct in this matter, but humbled by the support of his friends and their willingness to help him pay the restitution in this case.

The courts have long held that restitution can constitute an 'exceptional circumstance' that justifies downward departure. *See U.S. v. DeMonte,* 25 F.3d 343, 346 (6th Cir. 1994). In *U.S. v. Oligmueller*, 198 F.3d 669 (8th Cir. 1999), the court affirmed a departure based on extraordinary restitution. The Defendant requests the court to consider this case as "outside the heartland" and placing in the custody of the court, the sum in the amount of $151,843 owed for Defendant's conduct.

### IV. INCARCERATION WOULD HAVE AN EXTRAORDINARY EFFECT ON BUSINESS CAUSING LOSS OF JOBS

The Second Circuit in *United States v. Milikowsky*, 65 F.3d 4, 9 (2d Cir. 1995), held that departure from the Sentencing Guidelines may be warranted "where…imprisonment would impose extraordinary hardship on employees." Part of the goal of downward departures are to "reduce the destructive effects that incarceration of a defendant may have on innocent third parties." *Milikowsky*, 65 F.3d at 7. In *Milikowsky*, the Defendant was the sole owner and "only individual with the knowledge, skill, experience, and relationships" to operate a steel business on a daily basis. 65 F.3d at 8. After being convicted of one-count of price fixing the Second Circuit

6

affirmed that the Defendant was entitled to receive a departure of one offense level, based on the effect the Defendant's imprisonment would have on his employees. *Id.* at 6, 9.

Here, if Barklage was to be sentenced to a term of imprisonment, an extraordinary hardship would be placed on Barklage's employees, including his chief of staff and executive assistant. *See Milikowsky,* 65 F.3d at 7. Barklage is the sole owner and operator of The Barklage Company, and as such, Barklage, similar to the Defendant in Milikowsky, is the only person with the specific knowledge, skill, experience, and relationships necessary to operate the business. *See Milikowsky,* 65 F.3d at 8.

Without Barklage present to own and operate the Company, it is likely that the Company would cease to exist and the innocent third parties, his staff, would lose their jobs and sources of livelihood. *See Milikowsky*, 65 F.3d at 9. As the Second Circuit stated in *Milikowsky*, "the Sentencing Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." 65 F.3d at 9. Therefore, based on the extraordinary hardship that would be placed on The Barklage Company's employees, it is imperative that this Court consider a downward departure to probation to preserve the employment of the innocent third parties.

## V. REQUEST FOR VARIANCE/ DOWNWARD DEPARTURE

"Courts have long recognized that where the sentence called for by the guidelines would result in punishment greater than necessary the court can depart downward." *U.S. v. Redemann,* 295 F.Supp.2d 887 (E.D. Wisc. 2003).

In *Gall v. U.S.,* 128 S. Ct. 586 (2007), an ecstasy distribution case, the court in an opinion by Justice Stevens, joined by Justices Roberts, Scalia, Kennedy, Souter, Ginsburg and Breyer, discussed a case involving a **100 percent** downward variation from the guidelines. The Eighth Circuit reasoned the departure should be justified by "extraordinary circumstances." The *Gall*

7

decision assisted lower federal courts in determining how to handle sentences that fall outside the guidelines range.

The court in *Gall* relied on *U.S. v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court held the federal sentencing guidelines are merely one (1) of the seven (7) factors federal district courts must look to when imposing sentences and federal appellate courts must review for "reasonableness." The guidelines are merely one factor, among many, and remain the product of thousands of studies of cases over 25 years, but there is no "rigid mathematical formula" that dictates the precise extent of departures.

The Court in *Booker* departed downward from what would have otherwise been a recommended sentence of 37 months to probation. *Id.* at 220. The U.S. Supreme Court held the sentence to be "substantially reasonable" and that such a vast variance or downward departure "might sometimes be appropriate." *Id.* at 221. The U.S. Supreme Court further held the "abuse of discretion review" could not stand and instead opted for a "substantially reasonable" approach for courts to "consult" the guidelines and "take them into account." *Id*. at 221.

Additionally, the U.S. Supreme Court held that courts should make an "individualized assessment" of the facts and consider the extent of a "deviation and insure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 221.

In *Koon v. U.S.,* 518 U.S. 81, 126 (1996) the Supreme Court held:

> "A sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."

"It is important… to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate… the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when the

8

opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." *U.S. v. Gaskill,* 991 F.2d 82, 86 (3rd Cir. 1993). U.S.S.G. §5H1.4 permits a downward departure any time a sentencing court is presented with sufficient evidence, such as the evidence in the case-at-bar.

U.S.S.G.§5H1.6 recognizes that in some cases, albeit not in "ordinary" cases, a court may downward depart as a result of a defendant's family responsibilities as well. *See* e.g. *U.S. v. Canoy*, 38 F.3d 893, 903-08 (7th Cir. 1994); *U.S. v. Haversat*, 22 F.3d 790, 797 (8th Cir .1994); cert. denied, 116 S.Ct. 671 (1995); *U.S. v. Parham*, 16 F.3d 844 (8th Cir 1994); *U.S. v. Sclamo*, 997 F.2d 970 (1st Cir. 1993); *U.S. v. Rivera*, 994 F.2d 942 (1st Cir. 1993); *U.S. v. Gaskill*, 991 F.2d at 83-86; *U.S. v. Johnson*, 964 F.2d 124, 128-30 (2nd Cir. 1992); *U.S. v. Alba*, 933 F.2d 1117, (2nd Cir. 1991); *U.S. v. Pena*, 930 F.2d 1486, (10th Cir. 1991).

## VI.  CONCLUSION

Pursuant to 18 USC § 3553(a), a downward variance to a sentence of probation with supervised release is respectfully recommended as sufficient, but not greater than necessary, as it reflects the seriousness of the offense, promotes respect for the law, provides just punishment, serves as a deterrent to criminal conduct, and protects the public from further crimes. Such a sentence also takes into consideration the nature and circumstances of the offense and the history and characteristics of Barklage.

WHEREFORE, for each of the above stated reasons and in combination of all of the factors, Defendant respectfully requests probation be granted with special conditions under supervised release and for such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

_____/s/Joseph S. Passanise_____
JOSEPH S. PASSANISE, MO Bar #46119
TAYLON M. SUMNERS, MO Bar # 73114
Attorneys for Defendant

WAMPLER & PASSANISE
LAW OFFICE
Attorneys at Law
2974 E. Battlefield
Springfield, MO  65804
joe@deewampler.com
taylon@deewampler.com
PH: (417)882-9300
FAX: (417)882-9310

## Certificate of Service

I hereby certify that on the 24th day of November 2021, I electronically filed the foregoing with the U.S. District Court Clerk for the Eastern District of Missouri using the CM/ECF system which sent notification of such filing to U.S. Attorney, St. Louis, Missouri.

_____/s/Joseph Passanise_____
Joseph S. Passanise
Taylon Sumners
Attorneys at Law